Rafael Arenas, Plaintiff and Appellant, v. Rafael Batalla Córdova, Marshal of the Municipal Court of Caguas, Defendant and Appellee; Miguel Francisco, Intervener and Appellee.

No. 6734. Argued November 27, 1934.—Decided February 5, 1935.
Rehearing denied March 27, 1935.

*A. Fernández Sánchez* for appellant. *Pablo Defendini* and *Rafael F. Barbosa* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

Rafael Arenas, of Caguas, P. R., instituted this injunction proceeding in the District Court of Humacao against Rafael Batalla, Marshal of the Municipal Court of Caguas, and alleged in short that in execution of a judgment rendered by the Municipal Court of Caguas in an action of debt brought before it by Miguel Francisco against Felipe Licha, the defendant marshal had levied upon as property of Licha a Buick automobile, license plate No. 3343, and had advertised the sale thereof at public auction; that the plaintiff was the holder of a promissory note for $800 signed by Licha on June 6, 1932, to secure which Licha had mortgaged the said automobile, the mortgage having been registered on July 14, 1932;

that Francisco had not deposited the amount of the mortgage in court, and that if the auction were held, it would cause irreparable damage and injury to the petitioner.

The court ordered the defendant to appear and show cause, and at this point Miguel Francisco intervened in the proceedings, and filed a demurrer and an answer in which it is repeatedly alleged that the mortgage in favor of Arenas was fraudulent because when it was constituted Licha was not the owner of the automobile, having acquired the same under a contract of conditional sale.

There appears to have been no pleading filed by the defendant marshal. As a matter of fact, the suit continued between the plaintiff and the intervener, and it was decided on June 20, 1933, against the former, who feeling aggrieved by that decision, took the present appeal.

In his statement of the case and opinion, the trial judge said that, in view of the contradictions which he observed in the evidence, he had reached the conclusion that the mortgage was simulated, "made for the sole purpose of defeating the rights of third persons with legal credits to execute against the properties of Licha."

█ The brief of the appellant assigns a great number of errors and discusses them at length. We shall refer only to the simulation. We have examined carefully the evidence offered, and in our judgment it is not sufficient to justify the conclusion that the transaction between Licha and Arenas appearing in the mortgage document was vitiated by fraud.

The plaintiff showed by documentary proof that the automobile in question was mortgaged by Licha in his favor to secure a promissory note for $800, on July 6, 1932, and that the mortgage was recorded on July 14, 1932. And it was not until March 18, 1933, that the intervener Francisco obtained the judgment against Licha for $300, in execution of which the marshal, on May 17, 1933, levied on Licha's automobile.

The origin of the transaction was explained by the plaintiff at the trial, under oath, as follows:

"Q.—State how the debt for $800 arose which he bound himself to pay to you and for which he constituted that mortgage.—A. Licha asked me first for $200, and I advanced it to him; then he came to me worried that an installment on his automobile would mature, and asked me for $100 more and I advanced it to him, that was $300; he came back a little later and told me that he was worried that if he did not pay on the automobile he would lose it because it was on a contract of conditional sale. At that time he was already behind on the rent, and owed me $100; so that I had advanced $300 to Mr. Licha and $100 on the house, or $400; $300 was owing on the automobile and we agreed to pay another installment on the automobile, which was $100, and $200 which he was owing on the house which he had bought was $700, and I figured $100 more for four months with the intention that he should keep on paying then, and on that we made a total of $800; so that I secured my debt of $800 with a mortgage on the automobile, retaining the money which was owing to the seller to pay it at maturity, for which purpose I agreed through Mr. Mangual that instead of paying $91, there would be paid $50, and in four different months I paid through Mr. Mangual the $200 which was owing on the automobile when the mortgage was made. So that Felipe Licha never received at any time the $800, but the $800 represented the rentals that he owed to me and what he owed to the automobile concern.—Q. Up to what time did Licha live in that house?—A. That would be about three or four months, ago.—Q. You knew the automobile was on conditional sale?—A. Yes, sir.—Q. He told you so?—A. Yes, sir.—Q. And knowing that it was, on conditional sale you went through with the transaction?—A. Because I did not deliver to him the money which he owed on the automobile, but I kept it in order that I might pay the debt owing on the automobile.—Q. Did he have any other property?—A. No, sir.—Q. On the date on which he contracted this debt did he have any other property.—A. When he commenced to borrow, he had an established business as a peddler.—Q. Did he tell you at any time that he had an account with one Miguel Francisco?—A. No, sir.—Q. When was it that you learned that one Miguel Francisco had a claim against Felipe Licha?—A. When the automobile was attached by Miguel Francisco.—Q. You could have done that business?—A. Yes, sir.—Q. Were you in condition to do it?—A. Yes, sir.—Q. Can you tell us more or less what capital you have?—A. Between my wife and I, I think we have from $20 to $25,000 capital."

The contradiction to which the court below refers between the testimony of the witness and the documentary evidence of the intervener consists in that the latter shows that the automobile continued on January 13, 1933, to be registered in the Department of the Interior in favor of Licha under a contract of conditional sale with Manuel Colón Vázquez, dated July 22, 1932, and registered on August 25, 1932, for the sum of $202.45, payable in four monthly installments, the first of $52.45 and the remaining of $50, from which the court below concludes that what Licha stated upon the constitution of the mortgage was untrue, as well as the statement by Arenas at the trial "that in the eight hundred dollars represented by the promissory note was included the $200 of the Colón Vázquez credit and that he had paid that sum. On July 6, 1932, the contract for $1,750 (the original conditional sales contract) had not been canceled, and that of July 22, 1932, had not been executed."

Arenas did not testify that on the date of the mortgage he had paid what Licha owed, as a result of the conditional sale, but that it was included in the mortgage, and he assumed the obligation to pay that debt in monthly installments of $50.

It is true that the second contract between Licha and Colón appears to have been executed on July 22, 1932, that is, a few days after the mortgage contract, but the earlier contract was in existence and agrees as to amount with what Licha was owing about that time not only to Colón but also to the concern which sold to Colón, as a result of the conditional sale.

It is also true that the last contract, that of July 22, 1932, does not appear to have been canceled in the Department of the Interior, but that fact does not weaken or destroy what Arenas said as to his having fulfilled his obligation and paid what he was owing on account of the conditional sale.

In order to conclude that the mortgage contract is fraudulent, something more is necessary than the doubts which

might arise on account of the contradictions already mentioned, upon which the trial judge based his decision.

 The appellee in his brief maintains that from an examination of the mortgage contract in the light of the evidence, it is necessary to conclude that the mortgage contract was void by reason of the false statements made by Licha as to his being the owner of the automobile and as to the automobile being free from liens, when the fact was that the automobile still belonged to the conditional seller and was subject to a lien for the unpaid portion of the purchase price; facts which were admitted by the plaintiff himself at the trial.

The affidavit of Licha in the chattel mortgage reads thus:

"Felipe Licha, of Caguas, Puerto Rico, being duly sworn, deposes and says:

"That I reside in the Municipality of Caguas, Puerto Rico; that I am the lawful owner of the property described in the foregoing mortgage, of which this affidavit forms a part; that the said property is free from liens and encumbrances, except the mortgage of which this affidavit forms a part; that there are no judgments or executions against me that affect the title of the said property described in said mortgage; that the foregoing mortgage is made for the purpose of securing the obligations specified therein and for no other purpose, and that the same is a just and valid obligation."

It would have been clearer and more correct if Licha had made reference to the conditional sale and to the present status thereof, but we do not believe that what he said may be considered as false and fraudulent statements resulting in the nullity of the contract as to the intervener Francisco.

 As to his being the owner of the automobile which he mortgaged, his statement finds support in the decision in *Montalvo* v. *Valdivieso*, 38 P.R.R. 487. In the opinion of this court delivered by Mr. Justice Texidor a study was made of Act No. 61 of 1916 (Session Laws, page 123), establishing the system of so-called conditional sales, and of the Spanish

and American jurisprudence upon the subject, and in conclusion it was said:

"As a practical side of conditional sales and their effects, it is convenient to recall that in the conditional sales of automobiles in Porto Rico the conditional purchaser pays the insurance expenses and premiums, the license and the tax on the automobile. He is placed, therefore, in a situation enabling him to perform all the duties incumbent on the owner thereof. And this is because he is lawfully and practically the owner with the risk of losing his ownership if he fails to fulfill the obligation of paying the price agreed upon. But this is exclusively a juridical nexus between vendor and vendee, since nobody except the vendor may exercise the right to discontinue that ownership."

And as to the automobile being free from liens, this statement, although inexact because the property was still encumbered to secure a part of the purchase price owing, is explained by the assumption on the part of the mortgage creditor of the obligation to pay it. If it were the conditional seller claiming against Arenas, the question would be of importance, but where a creditor by virtue of a judgment entered eight months after the registration of the mortgage is concerned, it has no real importance.

Consequently, since the intervener Miguel Francisco has not shown the invalidity as to himself of the mortgage held by the plaintiff Arenas, he could only attach the mortgaged automobile in execution of his judgment after depositing the amount of the obligation secured by mortgage, and, as he has not done so, the court must grant the injunction prayed for. Section 10 of Act No. 19 of 1927, as amended by Act No. 71 of 1930 (Session Laws, p. 448), reads as follows:

"Section 10.—No mortgagor of personal property shall sell, pledge or otherwise dispose of or encumber property mortgaged my him, or any part thereof, without the written consent of the mortgagee. But such property, may be attached after depositing in the office of the secretary of the court taking cognizance in the case the amount of the obligation secured by mortgage; Provided, That the mortgaged property shall not be removed from the municipality where it is

located, prior to the deposit of said amount, except as provided in section 9 of this Act.''

The appeal must be sustained and the judgment appealed from reversed and substituted by another granting the injunction prayed for, without costs.

ON MOTION FOR REHEARING

Mr. Chief Justice Del Toro delivered the opinion of the court.

After this appeal was decided by judgment of February 5, 1935, reversing the judgment appealed from, the intervener-appellee Miguel Francisco asked for a reconsideration by motion of March 5. The interested parties were heard on the merits of said motion on the 18th of this instant March.

The grounds upon which we based our opinion are not attacked. An entirely new question of jurisdiction is raised.

We agree with the intervener-appellee that, if he were correct, a rehearing should be granted, because if this court acquired no jurisdiction, its judgment would be void.

Let us see now if he is correct in maintaining that this Supreme Court did not acquire jurisdiction to hear the appeal.

■ He contends, in the first place, that the appeal was not notified to his co-defendant Batalla, and in fact it does not appear from the record that such notification was made. Since, however, it does appear from the record that, although the suit was begun against Batalla, the latter filed no pleading and the intervener Francisco was the one who raised the only contest considered and decided by the trial court, and it may be concluded that Batalla is not a real party contestant interested in the litigation, notice to him was not necessary in order for this court to acquire jurisdiction in accordance with the law and the cases.

■ In the second place, he maintains that it does not appear that he himself was notified of the taking of the ap-

peal. From the record it appears that the notice of appeal was given in time by mail to Rafael F. Barbosa, an attorney. From the certificate of service of the notice it does not appear expressly that the envelope deposited in the post office was duly stamped or that Barbosá was the attorney for the intervener Francisco; but it does appear from the record that Barbosa was the attorney by whom Francisco asked leave to intervene, filed his demurrer and his answer, and who appeared at the trial together with his other attorney Defendini. All this occurred before the taking of the appeal. Afterwards it appears that the transcript of the record which the other attorney Defendini certifies as correct, was prepared with Barbosa as attorney for the intervener; that Barbosa and Defendini signed the brief of the intervener-appellee before this Supreme Court, and that Barbosa was the only one who appeared to represent and defend him at the hearing on the appeal.

Under these circumstances, both defects are cured, and one may be sure that the notice was given in time. If the certificate had to speak for itself, it would not be sufficient to find that notice had been served and that consequently the court had acquired jurisdiction, but in addition to the certificate, the facts speak, supplying its deficiencies. The cases cited by the intervener-appellee in his memorandum in support of his motion for rehearing refer to different situations, and are therefore inapplicable.

The motion for rehearing must be denied.